## Huber Manufacturing Company v. Piersall.

(Decided October 30, 1912.)

### Appeal from Fayette Circuit Court.

1. Contracts—Husband Acting as Agent for Wife—Execution of Contract Subsequently by Wife—Imposing Harder Contract—Overreaching of Wife.—Where the husband, acting as the agent of his wife, purchased an engine, with the understanding that if it did not do good work the seller would return the money paid and note executed for it, and the wife was subsequently induced by the seller to execute a written contract, not the one the husband

had made for her, but one imposing harder conditions, she was so far overreached as to make that contract not her contract. In an action by her to recover the cash payment and cancel the note, the trial court properly gave her the relief desired.

2. Contracts—Merging of Verbal Into Written Contract.—One who signs a contract without reading it takes the risk, and had the verbal contract made by the husband for the wife been merged into the one executed by her, she would be bound by it, but where her signature was procured to an entirely different contract, without understanding what her real contract rights were, she is not bound by it.

GEORGE C. WEBB for appellant.

FORMAN & FORMAN for appellee.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

On the afternoon of Sunday, July 1, 1906, J. M. Piersall, as the agent for his wife, Nina Piersall, the appellee, bought of the general agent of the Huber Manufacturing Company, at Lexington, Kentucky, an eighteen horse power traction thresher engine. He took it that night to the farm of one Tanner, in Fayette County, where he endeavored to thresh with it on Monday. Finding it unsatisfactory, he returned it to the Huber Manufacturing Company agency on Tuesday morning. When he bought the engine he had with him a blank check signed by his wife. This was filled out for $650 and given to the agent. On Monday morning, Mrs. Piersall came to town and executed her note for $645. This action was brought to recover the $650 cash payment and to cancel the $645 note. Pending the litigation the Huber Manufacturing Company presented this note at the bank where it was made payable; whereupon it was paid and charged to Mrs. Piersall's account. She then amended her petition, asking the recovery of this sum also. The trial court gave her the relief desired, and the Huber Manufacturing Company appeals here.

The facts are in sharp conflict. The plaintiff's case is as follows: J. M. Piersall says that he bought for his wife the engine on the Sunday afternoon; that nothing whatever was said about any written order or contract, and that none was prepared; that it was agreed that the engine would do good work, and that if it did not the engine should not be the property of the purchaser; that it was agreed that his wife was to execute her note for the

deferred payment and a mortgage on the engine to se-
cure this note; that he was to bring his wife in at some
early and convenient day to execute these papers; that
with experienced engineers he took the engine to the
Tanner place, made every effort to use it, and that it
would not do the work required of it; that about ten
o'clock on Monday morning he sent Chelsea Piersall, his
brother, to telephone to Walker of the conditions.  Chel-
sea Piersall testifies that he telephoned about ten in the
morning; that he recognized Walker's voice; and that
Walker said he would be down in a few minutes.  Mrs.
Piersall testifies that early on Monday morning she re-
ceived a telephone message from the agent, Walker, ask-
ing her to come in to his office and execute the papers;
that when she arrived there the papers were not pre-
pared and she waited for their preparation; that while
waiting, Walker was called to the telephone, when she
heard him say that he would be down there in a few min-
utes—the same answer that Chelsea Piersall testifies he
received from Walker at about that hour; that after this
telephone conversation Walker read over to her a writ-
ten contract order, and that she executed it, the note and
the mortgage; that meantime she had not seen her hus-
band or had any communication with or from him.  Mr.
Tanner, the farmer, and sundry of the engineers and
laborers employed by Piersall, who were along with the
engine, testify that it was wholly defective and would
not at all do the work.  It was returned on Tuesday
morning and by agreement was stored in the Huber
warerooms without prejudice to the rights of either
party.  Piersall's testimony that nothing was said
about a written contract is supported by some of these
men who were present when the trade was made on Sun-
day afternoon.

On the defendant's side Walker testifies that he told
Piersall that there would have to be an order given for
the engine; that he, Walker, secured an order blank,
filled it up and pushed it over toward Piersall, asking
him to sign it; that Piersall said no, that his wife would
have to do that; that he asked Piersall whether his wife
would come in the next morning and sign the papers, or
whether a man should be sent out to her house with
them; that Piersall said that there was a telephone in
her house and that Walker could call her up; that he,
Walker called her up by phone, told her of the sale and

asked her whether he should deliver the engine and she replied in the affirmative; that he told her that the papers, order, note and mortgage would have to be signed, and asked her whether she would come in the next morning or whether he should send a man out; that she responded that she would be in the next morning; that he left the printed order filled in lying on the table; that the next morning Mrs. Piersall came in, and that when the witness went into the office he found her looking over the printed order contract; that he had the mortgage and note prepared, whereupon Mrs. Piersall executed the written order, the note and the mortgage; that he received no telephone complaint at all during the morning. In rebuttal he testifies that Mr. Piersall asked him at the time of the trade whether the engine was guaranteed or warranted; that he, the witness, responded that it had the Huber Company's regular warranty, and that if the engine did not do what it was guaranteed to do, they would refund his money and his note. Other witnesses support Walker's statement that a yellow contract form was lying on the table between the parties on Sunday afternoon. For the defendant it further appears that later in that week a thorough test was given to the engine on the farm of one Clark, and that it did satisfactory work; that Mr. Piersall was requested to attend the test, and declined; that he was requested to permit the engine to be tried out attached to his thresher, and declined; that the engine was in the same condition when it was tried out on the Clark place as it was when tried out by Piersall on the Tanner place.

In rebuttal plaintiff introduced J. M. Piersall, a Mr. Beck, a Mr. Couchman, Mr. Chelsea Piersall, a Mr. Layton and a Mr. Creed, all of whom testified that about ten o'clock at night on the nights of July 4th and 5th some of them mentioning the one date, some the other, and some both, they had seen the Huber warerooms lighted up and three men at work about this engine. These nights intervened between Piersall's use of the engine and the use of it on the Clark place.

It satisfactorily appears from the testimony of plaintiff's workingmen witnesses and of other disinterested witnesses that for some reason the engine would not work at the Tanner place; and that by using the utmost efforts they only succeeded in threshing in an entire day

not exceeding 200 bushels of grain, while an average day's threshing was 1,000 to 1,500 bushels; that Piersall was an experienced thresher-man; that his engineers were experienced; and that not only did the engine not thresh, but that enough steam could not be kept up in it to propel it properly along the highway, pulling nothing save its own weight. The defendant's testimony establishes that it did good work on Saturday. But the testimony, if true, of the night work on the engine by the Huber Company's experts may explain the difference between the character of its work on the two days.

In the written order or contract signed by Mrs. Piersall it was agreed that if the engine did not, within six days from its first use, do the work for which it was sold, the purchaser should immediately give written notice to its home office in Marion, Ohio, by registered letter, and written notice also to the local agent through whom the purchase was made, stating particularly wherein the engine failed to do its work; and further, that a reasonable time should be allowed the company to get to the engine with skilled workmen, remedy the defects, etc. It is admitted that no such notice or notices were given. If this written contract was the contract between the parties, it is evident that the plaintiff must fail; for such a provision as to notice and opportunity to examine and repair has been upheld by this court in the case of J. I. Case Threshing Machine Co. v. Mattingly, 142 Ky., 583; Nichols & Shephard Co. v. Caldwell, 26 K. L. R., 136; and other cases. Nor if the written contract be the contract, can Mrs. Piersall rely upon her supposed lack of knowledge of its contents. One who signs a written contract without reading it takes the risk. J. I. Case Threshing Machine Co. v. Mattingly, supra. Nor if the verbal contract made on Sunday by her husband as her agent was merged into the written contract signed by her on Monday morning, can she recover.

First, it is proper to express our conclusion that the testimony for plaintiff shows that on Monday the engine did not perform its work; and that it was so far short of performance as to justify its return to the company if the contract permitted its return. About this there is not much of difficulty, notwithstanding the marked conflict in the testimony in behalf of the litigants. Mr. Walker says that at the time of the sale he told Piersall, the agent, that there would need to be a written order. He

did not tell him that there would need to be a written
contract setting up entirely distinct and different terms
from the oral contract of sale; at least he does not tes-
tify that he so told him.  While he says he then pre-
pared a writing and requested Piersall to sign it, he does
not say that Piersall ever had the writing in his hands or
ever had its contents explained to him.  He does say that
he told Piersall that the engine was sold with the regu-
lar Huber guarantee, and that if it did not do the work
that company would refund the money and the note.
This statement by him did not at all imply that there was
a written contract to be entered into.  Had the written
contract been shown to Piersall it is entirely possible
that he would not have acceded to its terms.  When Pier-
sall left with the engine, therefore, he left with no under-
standing of any contract rights on either side other than
those which he had made for his wife in the oral trade.
According to his version of that trade, the engine was
not to be his unless it would perform the work.  Accord-
ing to Walker's version, if it did not do the work the
Huber company would return the money and the note.
Upon this understanding and none other insofar as the
record discloses, Piersall took the engine away as the
buying agent for his wife.  When Mrs. Piersall came in
on Monday morning she was presented with a written
contract with the request that she should sign it.  It was
not the contract which her husband had made for her;
and though she read it over and understood its contents
fully, she was entitled to the contract which her husband
had made for her, and not to another substituted by the
agent of the manufacturing company.  To illustrate:
Had her husband bought this engine at $1,000, and the
Huber Company obtained her signature to the contract
for $1,295, without disclosing the true contract to her, it
could not have recovered exceeding the $1,000.  In tak-
ing the written contract from her imposing upon her
much harder contract rights than those her husband had
gained for her, without any explanation to her by her
husband or by the Huber Company of what her real con-
tract was, she was so far overreached as to make that
contract not her contract.  The appellant, of course, is
right in its position that where an agreement is made
and afterward reduced to writing, the written memorial
of the contract must be taken, in the absence of fraud or

mistake, as the entire contract. But the error of that position here lies in the fact that the oral contract made was not merged into the written contract, but an entirely different contract was substituted to which Mrs. Piersall's signature was procured without her understanding what her real contract rights were.

The judgment of the trial court is in conformity with these views and is, therefore, affirmed.