## Morgan v. The Mengel Company.

(Decided June 23, 1922.)

### Appeal from Graves Circuit Court.

1. Contracts—Defense That it Was Signed Without Reading.—A party to a written contract cannot defend against its enforcement on the ground that he signed it without reading it, unless he aver facts showing circumstances which prevented his reading the paper, or was induced by the statements of the other parties to desist from reading it.

2. Contracts—Duty to Read Before Signing.—It is the duty of a party, before signing a writing, to carefully read and understand it, and when the paper is prepared by the opposite party and brought to and left with the party attempting to defend against the writing, the latter is estopped to say that he did not read the writing before he signed it or that he did not understand its contents.

J. E. WARREN for appellant.

W. J. WEBB for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This action was commenced by the Mengel Company against E. A. Morgan and George H. Greenup, in the

Graves circuit court to recover of the defendants the sum of $3,461.77, for timber and logs which it is averred the defendants sold and agreed to deliver to the Mengel Company on or before August 1, 1920, and had failed to deliver. About June 5, 1920, George H. Greenup obtained from the Mengel Company $7,000.00 for which he agreed to furnish timber to the company. At the time the money passed from the Mengel Company to Greenup they entered into the following written contract:

"Louisville, Kentucky, June fifth, 1920.

"We, the undersigned, do hereby sell and convey to the Mengel Company all of the oak timber standing on a tract of 413 acres of timber land, belonging to us and described under exhibit A, hereto attached.

"This sale is made in consideration of the cash advance of $7,000.00 made by the Mengel Company and now in our hands. This document becomes void and of no value after we have delivered to the Mengel Company, sufficient logs to off-set the total amount of our indebtedness to the Mengel Company.

"GEO. H. GREENUP.

"Sworn to and subscribed before me by Geo. H. Greenup, this June 5, 1920.

"F. L. MOSELEY,
Notary public Jefferson county, Ky.
My commission expires Jan 8, 1924.

"E. A. MORGAN.

"Subscribed and sworn to before me by E. A. Morgan, this June 23, 1920.

"W. H. WYMAN,
Notary public Graves county, Ky.
My commission expires January 27, 1924."

Before the execution of the contract Greenup needed credit to carry on his logging business, and he employed Morgan with a team at ten dollars per day to assist him in the work and agreed to give Morgan $2,500.00 if he would become the surety of Greenup upon certain notes which Greenup was making to raise money with which to carry on his business. To secure Morgan against loss on account of said suretyship Greenup executed and delivered to Morgan a mortgage covering the 415 acres of timber land located in Tennessee from which the timber sold to the Mengel Company was to be taken. It appears that Greenup went into bankruptcy before this suit was

commenced on the 17th of August, 1920; at any rate he did not file an answer or make defense to the action. Morgan filed an answer, set-off and counterclaim by which he denied that he entered into a contract in writing or otherwise with the Mengel Company by which he agreed to sell or convey to the Mengel Company any of the $7,000.00 which the petition alleges was paid to him and Greenup as consideration for the timber. He then averred that Greenup was the owner and in possession of the 415 acres of timber land in Tennessee, and that as such owner he contracted to sell the Mengel Company certain oak timber at the price of $7,000.00, which the Mengel Company advanced to the defendant Greenup; that at that time and before defendant Morgan held a mortgage or deed of trust against all the timber standing on said tract of land. To enable Greenup to contract with the Mengel Company for the sale and delivery of the said quantity of timber, Morgan agreed to release so much of said timber from the operation of said mortgage as was necessary to satisfy the $7,000.00 advanced by the Mengel Company, and that this was the only undertaking or agreement to be performed by Morgan with the Mengel Company. He further averred that the contract above copied was wholly prepared by the plaintiff in the absence of Morgan and that the same was presented to him and represented by the plaintiff's agents as being only such a contract as above set out, and that his signature thereto was desired for the purpose hereinafter set out and that upon such representation Morgan signed his name to said contract, and that the said contract did not contain all of the agreement made between the Mengel Company and Greenup and Morgan.

By another paragraph of the answer it is averred that the plaintiff company knew that Greenup was extensively engaged in the business of buying and selling logs and timber, but that the only land he owned was a tract of 415 acres located in Tennessee; that simultaneously with the execution of the contract sued on, and thereafter, it was agreed between the plaintiff Mengel Company and Greenup that any timber procured from any other source and which conformed to the specifications agreed upon by the parties should be shipped, by Greenup, to and accepted by the plaintiff and credited upon the advance of the $7,000.00, said credit to be at the stipulated price agreed upon by Greenup and the plaintiff; that under

said arrangement Greenup procured and had ready for shipment and tendered to plaintiff logs and timber of the species and dimensions called for in his agreement with plaintiff; that Greenup requested the plaintiff to accept such logs and timber for shipment in accordance with the contract, the aggregate amount of which logs and timber so procured and owned by said Greenup which he so tendered and was ready to be delivered to the plaintiff at said prices, was more than sufficient to have satisfied said $7,000.00 advance in full. A general demurrer was filed to the answer, set-off and counterclaim, and sustained by the court to the second paragraph of the said pleading which was all of the affirmative matter therein.

Upon the calling of the case for trial the defendant Morgan entered a motion for a continuance of the case and filed in support thereof affidavits, but the court overruled this motion to which Morgan excepted. The jury then came and after hearing the evidence and considering the same in connection with the instructions of the court returned a verdict for the Mengel Company in the sum of $3,461.77. Judgment being entered in accordance with the verdict Morgan appeals.

In his motion and grounds for a new trial appellant sets out the following reasons: (1) The court erred in forcing the defendant into trial in the absence of his co-defendant, George H. Greenup; (2) the court erred in refusing to give to the jury instruction "B," directing the jury to find for the defendant; (3) the court erred in giving instruction "A," which directed the jury to find for the plaintiff. One of the contentions of appellant Morgan is that the writing sued on does not express the agreement made between himself and Greenup, on the one side, and the Mengel Company on the other, but said writing omits a large part of said contract and does not embody some very material parts of the contract. It is his contention that he was merely releasing the timber on which he had a mortgage so that Greenup might sell the same to the Mengel Company and thus obtain $7,000.00 cash but that he did not assume the debt of Greenup or obligate himself to pay to the Mengel Company any money whatever. In support of his contention that the contract does not express the terms of the agreement, he says that he was deceived and misled by the false statements and representations of the agents of the Mengel Company and Greenup and was thus misled into signing

the contract. According to his evidence he did not read the contract before he signed it, but signed it upon the representations of Greenup and Williams, the agent of the Mengel Company. He does not state, however, that he was not afforded a fair opportunity to read the contract. He was overseeing the loading of a car of logs at the siding when Williams and Greenup approached him and asked him to sign the contract. Without reading it he stepped aside and started to sign it with a pencil but after this was done Williams informed him that his company wanted the contract signed in writing before a notary public. It was then arranged that Morgan should carry the writing to a notary public and there sign and acknowledge it and leave it at a certain place for Williams, the agent of the Mengel Company.

When asked concerning whether he read the contract before signing it he said "No, sir, if I ever did I do not remember it."

"Q. You can read all right? A. Yes, sir. Q. You could at that time read as good as you can now? A. Yes, sir. Q. You could write as good as you can now? A. Yes, sir. Q. How old are you? A. Forty-six. Q. How long have you been engaged in business for yourself? A. Ever since I was twenty-one, I guess. Q. Accumulated property? A. Yes, sir. "

He was then presented the written contract and asked if he signed it, to which he answered: "I could not tell, because I didn't read it; yes, that is my signature and I guess that is the paper, while I really did not read it."

"Q. That was done at Wyman's office? A. Yes, sir, that is my recollection. Q. Was it on the same day? A. Yes, sir. . . . Q. Have you ever read the paper? A. I do not think I have. Q. Take it up there and read it to the jury, please. A. (Thereupon the witness read the whole writing to the jury, including the description of the land.)"

All this proves not only that Mr. Morgan was sufficiently educated to read typewriting, the way the contract was written, but he could read script and could do so readily. This contract contains only about fifteen lines, and it would have taken him only a few moments to have read and understood the whole paper.

As a general rule, says Corpus Juris, a person cannot avoid a written contract into which he has entered on the ground that he did not attend to its terms, that he

did not read the document which he signed, that he supposed it was different in its terms, or that it was a mere form. This text is supported by perhaps twenty-five or thirty Kentucky cases, including Bowen v. Chenoa-Hignite Coal Co., 168 Ky. 588; Talking Machine Company v. Metcalf, 164 Ky. 258; Huber Company v. Piersall, 150 Ky. 307, and many others of like import. 13 C. J. p. 370.

To the same effect is the text in 12 R. C. L. p. 386, where it is said: "It is well settled that a person who signs an instrument without reading it, when he has the opportunity to read it and can read, cannot avoid the effect of his signature merely because he was not informed of its contents. This text is supported by a number of cases from foreign courts, including Alabama, Massachusetts, Nevada, West Virginia and Wisconsin.

The same text in vol 6, p. 624, says:

"The courts appear to be unanimous in holding that a person who, having the capacity and an opportunity to read a contract, is not misled as to its contents, and who sustains no confidential relation to the other party, cannot avoid a contract on the ground of mistake if he signs it without reading it, at least in the absence of special circumstances excusing his failure to read. If the contract is plain and unequivocal in its terms he is ordinarily bound thereby. It is the duty of every contracting party to learn and know its contents before he signs and delivers it. He owes this duty to the other party to the contract, because the latter may, and probably will, pay his money and shape his action in reliance upon the agreement. To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made, or to allow him to admit that he signed it but did not read it or know its stipulations, would absolutely destroy the value of all contracts."

The case of Talking Machine Company v. Metcalf, reported in 164 Ky. 258, is exactly in point. In that case a merchant was entering into a written contract for the purchase of a number of machines from a company that manufactured talking machines. The testimony of the merchant upon this exact point runs about like this: About that time three or four customers came in and Mr. Gentry (the talking machine man) called me back and says: "Here is one other little thing I want you to sign just to show you are our representative."

"Q. Did you know at that time you were ordering thirteen sets of records and machines? A. I did not read it. Q. Why didn't you read it? A. I thought I was doing business with business people; I thought Mr. Gentry was an honest man. . . . Q. How long had he been there then? A. About two hours. . . . Q. Had you seen the paper before you signed it? A. No, sir."

On those facts we held the evidence insufficient to sustain a charge of fraud in the obtention of the signature of the merchant, for it clearly appeared that the merchant failed to read the contract although he had a reasonable opportunity to do so. There are many other Kentucky cases to the same effect.

It is next insisted by counsel for appellant that the learned judge who tried the case erred to appellant's hurt in sustaining a demurrer to the second paragraph of the answer, set-off and counterclaim. With this contention we cannot agree. From the allegations of the answer we are persuaded that no tender was made of logs of the dimensions and character required by the contract, and this being true the demurrer was properly sustained.

It is also insisted by appellant that a continuance should have been granted him at the term at which the case was tried, on his motion supported by his own affidavit. The affidavit filed in support of the motion for a continuance made by appellant Morgan relates only to the evidence of Greenup, the partner of Morgan. The evidence as set out by said affidavit is as follows: That Greenup and one Williams, the agent of the Mengel Company, presented the said paper to Morgan who was then busy at work loading some logs and that said Greenup and Williams stated to Morgan that said paper was one for the purpose of inducing Morgan to release his lien on the standing oak timber to the extent necessary to enable Greenup to fill his contract of sale with plaintiff, and that thereupon said Morgan signed said paper without reading it. This evidence is no stronger than that of Morgan, and granting all of this to be true there was no fraud perpetrated by the Mengel Company or its agents upon the appellant Morgan. It was his duty to have read the contract, and his failure to do so furnishes no shield behind which he may hide to avoid the effects of the written contract which he signed. He was allowed to read his affidavit to the jury as the deposition of the witness Greenup, and he thus obtained the full effect of said evi-

dence. In cases like this, it is always within the sound discretion of the trial judge to grant or withhold a continuance. This is necessarily so because the judge who is in possession of the facts, sees and hears the parties and knows in a general way at least the nature of the transaction out of which the litigation arose, is prepared to do justice between the parties, and this court will not disturb such ruling of the trial court unless a sound discretion has been abused.

There appearing no error to the prejudice of the substantial rights of appellant Morgan, the judgment is affirmed.

Judgment affirmed.