994 So.2d 439 (2008)
Hossam ANTAR, Appellant,
v.
SEAMILES, LLC, et al., Appellees.
Nos. 3D07-109, 3D07-3146.
District Court of Appeal of Florida, Third District.
October 29, 2008.
*440 Mark C. Perry, Fort Lauderdale; Shook, Hardy & Bacon, Humberto H. Ocariz and Daniel B. Rogers, Miami, for appellant.
de la O, Marko, Magolnick & Leyton, Miguel M. de la O, Miami, Joel S. Magolnick, and Farah J. Martinez, for appellees.
Before WELLS, LAGOA and SALTER, JJ.
WELLS, Judge.
In these consolidated appeals, Hossam Antar appeals from a final order relieving Seamiles, LLC, et al., from further performance of a mediated settlement agreement and from an order denying his Florida Rule of Civil Procedure 1.540 motion to set aside that final order. We agree that the trial court erred as a matter of law in concluding that one of the signatories to the settlement agreement, Ram Glick, was not bound by the agreement so as to relieve Seamiles of its obligation to perform. We therefore reverse the order relieving Seamiles from further performance but do not address the Rule 1.540 motion because our ruling on the underlying order makes its determination moot.

FACTS
On September 26, 2005, Antar and Seamiles[1] executed a settlement agreement mediated by retired federal judge *441 Edward B. Davis. That agreement settled a number of lawsuits between the parties relating to ownership and control of Seamiles, an entity formed by Antar in 2001, which Antar partially owned through his company, Cruise Holdings, LLC. In pertinent part, the agreement required that Antar and Cruise Holdings transfer all ownership interest in Seamiles, along with all of Seamiles' intellectual property, to Seamiles in exchange for $1,040,000 to be paid in installments of $200,000 within thirty days and $70,000 annually thereafter. These payments were, however, to be accelerated in the event Seamiles was "sold to a third party for cash," or, alternatively, assumed and guaranteed by a non-cash purchaser:
If Seamiles is sold to a third party for cash to the members, Antar shall be paid from said cash to satisfy the unpaid balance of the installment payments due hereunder. In any other type of transaction (e.g., sale for equity or merger), the surviving entity shall execute the necessary documents required to assume Seamiles' obligations herein and shall agree to remain under the jurisdiction of the court for the sole purpose of enforcing this Settlement Agreement (i.e., Hon. Robert Scola).
In April 2006, Antar filed a motion to enforce this portion of the settlement agreement, claiming that Seamiles was being or had been acquired by another entity or entities. Antar asked the court to enforce the settlement agreement by requiring the new owners to assume Seamiles' obligations and by accelerating the settlement payout if a cash buyout had taken place.
Seamiles responded to Antar's motion to enforce the settlement agreement, claiming that evidence "just obtained by the Seamiles Parties" established that Antar had falsely represented that he was the sole owner of Cruise Holdings with authority to transfer that entities' interest in Seamiles and that this false representation relieved Seamiles of any further obligation to perform as provided by paragraph three of the settlement agreement:
Antar represents and warrants, individually and on behalf of Cruise Holdings, LLC, that Antar is the sole owner of all interest in Cruise Holdings; that no third parties have any interest in Seamiles or any of its related entities; that Antar has the authority to transfer all said interest back to Seamiles; and if this representation is false, then Antar shall not be entitled to any further payments.
This claim was supported by the testimony of Ram Glick, a reputed part owner of Cruise Holdings and one of the signatories to the settlement agreement. According to Glick, he first learned during a fortuitous conversation with Seamiles' attorney some three months after Antar's motion to enforce the settlement agreement was filed, that "a piece of paper" he had signed at Antar's request the previous year was actually the signature page to the settlement agreement. This "paper" not only acknowledged that Antar was the sole owner of Cruise Holdings, but also that he had the authority to settle with Seamiles on Glick's behalf and to transfer all of Cruise Holdings' ownership interest in Seamiles to Appellees:
CONSENT TO, AND ACKNOWLEDGEMENT OF, SETTLEMENT AGREEMENT
The undersigned hereby represent that Hossam Antar was vested with the authority to enter into the foregoing Settlement Agreement on their behalf, and further acknowledge, agree with, and consent to the following specific provisions of the foregoing Settlement Agreement:
Paragraph 3

*442 Paragraph 4 (including footnote 1)
Paragraph 14[2]
While Glick could not and did not deny that he had twice signed page nine of nine of the settlement agreement (once while in Iceland and once a month later before a notary while in Miami), he nonetheless claimed that he was not bound by the agreement (and thus was still an owner of Cruise Holdings and, through it, Seamiles) because he had signed each time without seeing the entire agreement. According to Glick, he did this the first time in reliance on Antar's representations that his signature was being demanded by Seamiles as a condition to continued settlement negotiations  negotiations about which he was fully apprised  and that he would receive a copy of the full agreement when he returned to this country. However, Glick provided no explanation as to why, after returning to Miami one month later, he did not secure a copy of the entire agreement or why he again signed page nine of nine of a document, this time in the presence of a notary, without seeing the entire agreement. And neither Glick nor any other witness contradicted the notary's sworn statement that he would not notarize only a signature page without the remainder of the document that it acknowledges.
Based on this testimony, the court below entered an omnibus order "enforcing" paragraph three of the settlement agreement, thereby relieving Seamiles of any further obligation to pay Antar for his or Cruise Holdings' interest in Seamiles, while allowing Seamiles to keep both Cruise Holdings' ownership interest and the intellectual property transferred to it by Antar for only a fraction of the $1,040,000 settlement amount.
After Antar appealed from the omnibus order, Antar learned that Seamiles had filed a financial disclosure, under oath, in Canada contradicting its allegations regarding Glick's ownership made in this case. At Antar's request, this court relinquished jurisdiction for the purpose of permitting Antar to file and have heard a Rule 1.540 motion for relief from judgment, asserting fraud on Seamiles' part. The motion was denied and Antar's appeal from that order has now been consolidated with the appeal from the omnibus order "enforcing" the settlement agreement, both of which are the subject of this appeal.

DISCUSSION
It is the policy of this state to encourage settlements and enforce them whenever it is possible to do so. See Robbie v. City of Miami, 469 So.2d 1384, 1385 (Fla.1985) (finding that "settlements are highly favored and will be enforced whenever possible"); Hernandez v. Gil, 958 So.2d 390, 391 (Fla. 3d DCA 2007) (same). Accordingly, "[i]t is fundamental that `[a] stipulation properly entered into and relating to a matter upon which it is appropriate to stipulate is binding upon the parties and upon the Court.'" Dorson v. Dorson, 393 So.2d 632, 633 (Fla. 4th DCA 1981) (quoting Gunn Plumbing, Inc. v. Dania Bank, 252 So.2d 1, 4 (Fla.1971)). In this case, the parties agreed to settle a number of lawsuits during mediation with a former federal court judge. The agreement crafted by the parties, which intended to put an end to what appeared to be perpetual litigation, required the signatures not just of the parties named in the legal action at issue but also of all others who either claimed or might claim an interest in the entities that were the subject *443 of the litigation. Thus, the agreement expressly states that it is between Seamiles and "Hossam Antar, Cruise Holdings, LLC, and any persons who have any ownership interest of any kind in it (directly or indirectly) through Hossam Antar (collectively `Antar')," and is signed by Hossam Antar, Ahmed Antar, Jennifer Feldman, Brett Grady, Edward Farrell, and Ram Glick, all of whom had been identified as having or having had an interest in either Cruise Holdings or Seamiles.
By virtue of their notarized signatures, these individuals consented to the settlement agreement generally, and to paragraph three in particular. Thus, Glick, as "a person who [has or had] any ownership interest of any kind in" Cruise Holdings, LLC, like the other signatories to this agreement, expressly consented to Antar's paragraph three representations that he (Antar) was the sole owner of all interests in Cruise Holdings with the authority to settle this case and transfer Cruise Holdings' interests in Seamiles. Reading the agreement as a whole, we find no false representations were made. See Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc., 874 So.2d 26, 30 (Fla. 2d DCA 2004) (relying on general contract law and concluding that the court must read a contract "as a whole, endeavoring to give every provision its full meaning and operative effect," and that a single contract provision "should not be considered in isolation, but rather, the contract shall be construed according to the entirety of its terms").
Seamiles cannot avoid this result on Glick's assertion that he should not be bound to this agreement because: (1) Glick saw only the signature page of the agreement (which he signed while in Iceland visiting his son); (2) Antar told Glick that he needed Glick's signature to continue settlement negotiations; and (3) Antar told Glick that he would provide Glick with the entire agreement when he returned to this country. See, e.g., All Fla. Sur. Co. v. Coker, 88 So.2d 508, 510 (Fla.1956) (finding that "`[a] party to a written contract cannot defend against its enforcement on the ground that he signed it without reading it, unless he aver facts showing circumstances which prevented his reading the paper, or was induced by the statements of the other parties to desist from reading it.'" (quoting Morgan v. Mengel Co., 195 Ky. 545, 242 S.W. 860 (1922))). The testimony was that Glick was well aware of the settlement negotiations with Seamiles and actively participated with Antar in many meetings regarding this lawsuit. He also testified that he knew the other signatories to the agreement, including those listed on the page that he signed. Yet there is no testimony that he ever attempted to secure a copy of the entire agreement from any source, much less that Antar prevented him from obtaining it. And there simply is no explaining Glick's failure to secure the promised copy of the agreement after he returned to Miami from Iceland one month later, where he executed the agreement a second time, this time in the presence of a notary.[3]
Moreover, Glick has not sought to disavow this agreement. To the contrary, during the enforcement proceedings, Glick attempted to intervene to enforce the settlement agreement in order to obtain his share of the settlement proceeds under the terms of the settlement agreement. And after the trial court denied his motion to intervene, he filed a separate lawsuit against Seamiles in which he sought only to enforce the agreement, not to disavow *444 it.[4] Under the circumstances, Seamiles cannot avoid enforcement of the settlement agreement on the ground that the agreement is not binding on Glick. See Tabatchnick's II, Inc. v. Davis, 386 So.2d 37, 38 (Fla. 3d DCA 1980) (recognizing that the plaintiff, "having sued on the contract, necessarily affirmed it rather than disavowing it as required when bringing a suit for rescission"); Hustad v. Edwin K. Williams & Co.  East, 321 So.2d 601, 603 (Fla. 4th DCA 1975) (recognizing that damages for breach of contract and rescission are mutually exclusive remedies, such that "[i]f the contract is rescinded, it is though it had never existed, but if the remedy sought is damages for its breach the injured party necessarily thereby recognizes and affirms the initial validity and enforceability of the contract").
Seamiles' claim that it did not obtain all of the ownership interests in Seamiles that it was entitled to under the settlement agreement because the agreement was not binding on Glick is further undercut by the inconsistent position that it has taken in a public financial disclosure that Seamiles "was a bona fide purchaser for value of one hundred percent of the membership interests of Seamiles."
Given the totality of the circumstances, we can come to no conclusion other than Seamiles, when faced with the possibility of making an accelerated payment on the outstanding settlement amount of nearly $800,000, presented Glick's self-serving claim of ignorance of the contents of the document that he signed for the purpose of relieving itself from making payment, only to later reject Glick's claim in other venues  all the while keeping one hundred percent ownership interest in Seamiles to itself for a fraction of the $1,040,000 settlement amount.

CONCLUSION
Because we find that the trial court erred as a matter of law in concluding that Ram Glick was not bound by the settlement agreement so as to relieve Seamiles of its obligation to perform, we reverse the order on appeal and remand for further proceedings to determine whether a lump sum cash payment is due to Antar, or whether he is entitled to have Seamiles' successor "execute the necessary documents required to assume Seamiles' obligations" under the settlement agreement. In light of our decision herein, we see no need to address the Rule 1.540 order, which by virtue of this opinion is rendered moot.
NOTES
[1] This included Stephen Miller, individually, and on behalf of The Ozer Group; Steven Wise, individually, and on behalf of 2043673 Ontario Limited; David Marko, individually, and on behalf of Commercial Stock Holdings, LLC and de la O & Marko, P.A.; Ajay Baharani, individually, and on behalf of Solar Investments, Inc.; Adesh Baharani, individually; and Richard Londorio as manager of Monte Dei Paschi, LLC.
[2] This acknowledgement appeared on what was clearly labeled page eight of nine of the settlement agreement. Glick signed page nine of that agreement.
[3] This all ignores the uncontradicted sworn statement of the notary who acknowledged Glick's signature that he would not affix his seal to a signature without attachment of the document being acknowledged.
[4] Count I of the complaint in the separate action sounds in breach of fiduciary duty and seeks a damage award against Antar and imposition of "a constructive trust on all proceeds which may come due to Mr. Antar under the [Seamiles] Settlement Agreement." Count II states that it is a claim for fraudulent misrepresentation, and, like count I, seeks a damage award against Antar and imposition of "a constructive trust over proceeds of the [Seamiles] Settlement Agreement which may come due Mr. Antar." Count III is for breach of a contract in which Antar agreed to pay money to Glick "upon receiving the settlement amount from Seamiles, LLC," and, like the other two counts before it, seeks damages against Antar and imposition of a "constructive trust over proceeds which may come due Mr. Antar under the [Seamiles] Settlement Agreement." Count IV is against both Seamiles and Antar and seeks a declaration that he is "a 2% owner of Seamiles and imposing a constructive trust over any settlement proceeds which may come due Mr. Antar ... and over any monies previously paid to Mr. Antar by Seamiles under the [Seamiles] Settlement Agreement."