RENDERED:  OCTOBER 27, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0025-MR

CUBBY ANGEL PROPERTIES, LLC                                    APPELLANT

APPEAL FROM JOHNSON CIRCUIT COURT
v.        HONORABLE HOWARD KEITH HALL, SPECIAL JUDGE
ACTION NO. 21-CI-00074

CITIZENS BANK OF KENTUCKY,
INC.                                                            APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CETRULO AND COMBS, JUDGES.

CETRULO, JUDGE:  Appellant Cubby Angel Properties, LLC ("Cubby Angel")

appeals the Johnson Circuit Court order granting the summary judgment to

Appellee Citizens Bank of Kentucky, Inc. ("Citizens Bank").

## I.    FACTS AND PROCEDURAL HISTORY

Cubby Angel is a limited liability company that owns rental

properties.  Dr. Melissa F. Knuckles ("Dr. Knuckles") is Cubby Angel's sole

member and manager.  In December 2018, Dr. Knuckles, on behalf of Cubby Angel, engaged James David Johnson ("Johnson") as an independent contractor to assist with managing Cubby Angel's properties.  Johnson assisted with the day-to-day management of Cubby Angel's real estate business, including obtaining lease applications, reviewing applications, issuing leases, arranging repairs, and other maintenance activities.

Two months into his work with Cubby Angel, Johnson recommended to Dr. Knuckles that she execute a limited power of attorney authorizing him to undertake certain administrative matters for Cubby Angel.[1]  In pertinent part, the power of attorney gave Johnson "full power and authority" to "[e]stablish, modify, operate and terminate bank account[s] for and on behalf of Cubby Angel . . . and manage the day to day business of Cubby Angel [], including binding in contract[.]"

Dr. Knuckles admitted that she executed the limited power of attorney; however, she claimed that she signed it outside the presence of witnesses or a notary and did not have it "reviewed by legal counsel."  Johnson then had his sister, Susan Spradlin ("Spradlin"), notarize the document outside of Dr.

---

[1] Cubby Angel's Complaint, verified by Dr. Knuckles, admitted that she turned over all management and control of the financial affairs of the company and alleged that she did not learn until March 2020 that Johnson was disbarred in 2017 and that he was not licensed by the Real Estate Commission to perform these management services.

Knuckles's presence and recorded it with the Madison County Clerk. Later, Johnson recorded the same limited power of attorney with the Johnson County Clerk, except this version contained an extra page with two purported witnesses' signatures.[2]

Five months later, Dr. Knuckles executed a second financial power of attorney without "making a thorough review of it or having it reviewed by legal counsel." The financial power of attorney, in pertinent part, granted Johnson the power to

> receive and deposit funds in any financial institution, and to withdraw funds by check or otherwise to pay for goods, services, and any other personal and business expenses for my benefit. If necessary to effect my attorney-in-fact's powers, my attorney-in-fact is authorized to execute any document required to be signed by such banking institution.
>
> . . .
>
> Comprehensively, my Attorney-In-Fact is authorized to do any and all things that I could do if I were present which includes, but is not limited to, legal matters[.]
>
> . . .
>
> Any party dealing with my attorney-in-fact hereunder may rely absolutely on the authority granted herein and need not look to the application of any proceeds nor the authority of my attorney-in-fact as to any action taken hereunder. In this regard, no person who may in

---

[2] The validity of the witnesses' signatures is not pertinent to our limited review here.

good faith act in reliance upon the representations of my attorney-in-fact or the authority granted hereunder shall incur liability to me or my estate as a result of such act.

Again, Johnson subsequently had Spradlin notarize the document and had two "witnesses" sign the document, although none of the individuals was present when Dr. Knuckles signed it. Johnson then filed the financial power of attorney with the Madison County Clerk.

Two days later, on August 1, 2019, Johnson drafted a resolution for Cubby Angel purportedly authorizing him to "transact all business of and do all things necessary and appropriate in the operation of Cubby Angel . . . this includes the managing, opening, and closing of banking and financial institution accounts." Although the resolution also appears to be signed by Dr. Knuckles as Manager/ Sole Member, she did not recall seeing or signing this document. Again, Spradlin notarized the document.

A few weeks later, Johnson sent a letter to Citizens Bank directing it to open a checking account for Cubby Angel. Johnson also submitted to Citizens Bank a Certification of Beneficial Owners of Legal Entities form identifying Dr. Knuckles as the sole beneficial owner of the account and listing himself as "General Manager" of Cubby Angel and the "Person with Control."

Johnson then submitted Citizens Bank's form Limited Liability Company Authorization Resolution ("the Resolution") on behalf of Cubby Angel,

which certified that he was a "Manager or Designated Member" of Cubby Angel. The Resolution stated that it was adopted at a meeting of Cubby Angel's members on August 23, 2019. Johnson signed the Resolution as "Manager or Designated Member."[3] Cubby Angel contends the Resolution required a signature by "One Other Manager or Designated Member"; however, the form listed a "1" in the column indicating how many signatures were needed.

On August 27, 2019, Johnson and Citizens Bank entered an Account Agreement for a Business Checking Account for Cubby Angel ("Agreement"). The Agreement listed Johnson's personal P.O. Box as the address, indicated that the ownership of the account was an LLC, and that the business was "Rental." After opening the Citizens Bank account, Johnson began to deposit rent proceeds from Cubby Angel's properties. He then began converting those funds for his personal use.[4]

---

[3] The Resolution provided that "[t]he signature of an Agent on this resolution is conclusive evidence of their authority to act on behalf of the Limited Liability Company. Any Agent, so long as they act in a representative capacity as an Agent of the Limited Liability Company, is authorized to make any and all other contracts, agreements, stipulations and orders which they may deem advisable for the effective exercise of the powers indicated[.]"

[4] Cubby Angel's complaint alleges that Johnson (1) cashed a portion of the rent checks when he deposited them in the account; (2) paid personal expenses, like his mortgage and his personal car loan, using the account; (3) withdrew cash from bank tellers and ATMs; (4) transferred funds from the account to his personal accounts; (5) had Citizens Bank issue counter checks or cashier's checks that he would cash or use to pay for personal expenses; and (6) transferred funds out of the account via online payment services like PayPal and Venmo.

Once Cubby Angel became aware of Johnson's conduct, around March 2020, it terminated all powers of attorney, notified Citizens Bank that Johnson was no longer affiliated with Cubby Angel, and requested Citizens Bank to remit any funds from the account to Dr. Knuckles. A year later, in March 2021, Cubby Angel filed suit against Citizens Bank, Johnson, and Spradlin. As to Citizens Bank, the complaint alleged that it had committed (1) common law conversion; (2) common law negligence; and (3) statutory conversion.

Cubby Angel claimed Citizens Bank committed common law conversion because it took possession of and paid Cubby Angel's instruments to Johnson. Likewise, Cubby Angel claimed Citizens Bank was negligent because it

> failed to exercise ordinary care in opening the [Cubby Angel] account, allowing [] Johnson to conduct banking transactions for [Cubby Angel] . . . making cash withdrawal payments to [] Johnson . . . permitting [] Johnson to execute transfers and electronic payments from the [Cubby Angel] account, issuing "counter checks" for payments to [] Johnson's personal creditors and vendors . . . and in closing the [Cubby Angel] account, investigating the wrongful conduct . . . and remitting funds . . . to [] Johnson.

Finally, Cubby Angel claimed Citizens Bank committed statutory conversion, pursuant to Kentucky Revised Statute ("KRS") 355.3-420, because it paid Johnson on multiple instruments payable to Cubby Angel, and Johnson was not entitled to enforce such instruments or receive such payment.

In May 2021, Citizens Bank moved the circuit court to dismiss all claims against it for failure to state a claim upon which relief could be granted. Citizens Bank argued that it could not be held liable as a matter of law because Kentucky's version of the Uniform Commercial Code ("UCC") disposed of Cubby Angel's common law claims and Cubby Angel's statutory conversion claim was insufficient. Specifically, Citizens Bank argued the statutory claim was insufficient because Cubby Angel had signed the powers of attorney that gave Johnson authority to open bank accounts and "manage the day to day business[.]" The parties submitted the motion on the briefs in June 2021, and in April 2022, the court heard arguments on the motion.

In December 2022, the circuit court granted Citizens Bank's motion, treating it as one for summary judgment because the court had considered more than the pleadings.[5] *See Harrodsburg Indus. Warehousing, Inc. v. MIGS, LLC*, 182 S.W.3d 529, 533 (citing *Ferguson v. Oates*, 314 S.W.2d 518, 521 (Ky. 1958)) ("Where matters outside the pleadings are considered on a motion to dismiss for failure to state a claim, the motion must be treated as one for summary judgment.").

---

[5] Business records were submitted and attached to the complaint and memoranda that were presented to the court.

The brief order provided

> that Citizens Bank['s] Motion for Summary Judgment as to the Plaintiff's claims against it is GRANTED, because (1) a common law duty alleged in Counts VI [common law conversion] & VIII [common law negligence] does not exist under Kentucky law, (2) even if a common law duty alleged in Counts VI [common law conversion] & VIII [common law negligence] did exist under previous Kentucky law, it has been superseded by the Kentucky version of the Uniform Commercial Code, and (3) KRS 61.060 and *American Surety Company [of New York] v. Boden*, 50 S.W.2d 10 (Ky. 1932), protect Citizens Bank [] from the claim under the Kentucky version of the Uniform Commercial Code (KRS 355.3-420) for conversion of an instrument (Count VII [statutory conversion]).

Cubby Angel appealed.

## II.   STANDARD OF REVIEW

In reviewing a circuit court's decision granting summary judgment, this Court must determine "whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Phoenix Am. Adm'rs, LLC v. Lee*, 670 S.W.3d 832, 838 (Ky. 2023) (quoting *MGG Inv. Grp. LP v. Bemak N.V., Ltd.*, 671 S.W.3d 76, 82 (Ky. 2023)); Kentucky Rule of Civil Procedure 56.03.  The circuit court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) (citations omitted).

"Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions." *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010) (citation omitted). As such, this Court reviews the circuit court's summary judgment ruling *de novo*. *Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*, 436 S.W.3d 189, 194 (Ky. 2013) (citation omitted).

## III.   ANALYSIS

Cubby Angel argues that the circuit court erred when it determined Articles 3 and 4 of the UCC preempted Cubby Angel's common law claims, leaving only the statutory claim. Likewise, Cubby Angel claims the court erred when it found that the statutory conversion claim was ineffective against Citizens Bank as a matter of law.

### A.   UCC Preemption of Common Law Claims

Cubby Angel contends that the UCC does not preempt its common law claims against Citizens Bank and asserts that the circuit court misapplied the Supreme Court's decision in *Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.*, 434 S.W.3d 489 (Ky. 2014). We disagree.

Kentucky's UCC, at KRS 355.1-103(2), provides that

[u]nless displaced by the particular provisions of the [UCC], the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause, supplement its provisions.

The Kentucky Supreme Court has explained that "there is a strong policy in favor of treating the UCC as occupying the field and displacing common-law causes of action." *Dean*, 434 S.W.3d at 505. Nevertheless, our Supreme Court acknowledged that the UCC left "some room for the common law[.]" *Id.* at 506. The official comments to UCC § 1-103[6] further explain that

while principles of common law and equity may *supplement* provisions of the [UCC], they may not be used to *supplant* its provisions, or the purposes and policies those provisions reflect, unless a specific provision of the [UCC] provides otherwise. In the absence of such a provision, the [UCC] preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies.

*Dean*, 434 S.W.3d at 506 (quoting UCC § 1-103 Official Cmt. 2 (2002)) (emphasis added).

Therefore, our first question is whether the UCC's provisions preempt Cubby Angel's common law claims against Citizens Bank. To make such

---

[6] KRS 355.1-103(3) provides that the UCC official comments "represent the express legislative intent of the General Assembly and shall be used as a guide for interpretation of this chapter, except that if the text and the official comments conflict, the text shall control."

determination, our Supreme Court has used the "comprehensive rights and remedies test," which provides that common law claims are barred "where the [UCC] provides a comprehensive remedy for the parties to a transaction[.]" *Id.* at 506-07 (quoting *Sebastian v. D & S Express, Inc.*, 61 F. Supp. 2d 386, 391 (D.N.J. 1999)) (internal quotation marks omitted).

As the UCC should be applied "whenever possible" – *Id.* at 506 (citation omitted) – "courts dealing with 'hard cases' should be hesitant to recognize common-law or non-U.C.C. claims or to employ common-law or non-UCC remedies in the mistaken belief that they are dealing with one of the rare transactions not covered by the UCC." *Id.* (quoting *C-Wood Lumber Co., Inc. v. Wayne Cnty. Bank*, 233 S.W.3d 263, 281 (Tenn. Ct. App. 2007)) (internal quotation marks omitted).

We will begin with Cubby Angel's common law conversion claim: does the UCC provide a comprehensive remedy for conversion claims? In its complaint, Cubby Angel argues that Citizens Bank committed common law conversion when it took possession of and paid portions of instruments intended for Cubby Angel. However, the UCC provides a comprehensive remedy for such claims. KRS 355.3-420 plainly provides a cause of action for conversion of an instrument:[7]

---

[7] Cubby Angel's statutory conversion claim is addressed separately below.

-11-

(1) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by:

> (a) The issuer or acceptor of the instrument; or

> (b) A payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

(2) In an action under subsection (1) of this section, the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument.

In fact, Cubby Angel also brought a UCC conversion claim, under KRS 355.3-420, against Citizens Bank citing the same issues. Therefore, the UCC disposes of Cubby Angel's common law conversion claim.

Next, we must determine whether the UCC disposes of the common law negligence claim. Cubby Angel initially argued in its complaint that Citizens Bank

> failed to exercise ordinary care in opening the [Cubby Angel] account, allowing [] Johnson to conduct banking transactions for [Cubby Angel] in the account, making cash withdrawal payments to [] Johnson from the [Cubby Angel] account, permitting [] Johnson to execute transfers and electronic payments from the [Cubby Angel] account, issuing "counter checks" for payments to [] Johnson's personal creditors and vendors from the [Cubby Angel]

-12-

account, and in closing the [Cubby Angel] account, investigating the wrongful conduct of Johnson, and remitting funds remaining in the account to [] Johnson.

However, on appeal, Cubby Angel focuses only on Citizens Bank's alleged negligence in opening the account. Specifically, it argues that Citizens Bank was negligent in opening the account because Johnson "was not authorized by [Cubby Angel]" to do so; *i.e.*, Citizens Bank was negligent when it accepted an "unauthorized signature." Cubby Angel argues that the UCC does not address the *creation* of bank accounts; therefore, the UCC's "particular provisions" could not displace a common law negligence claim regarding the same. However, the claim is contingent on Johnson's authority (or lack thereof) to sign the requisite documents to open the account. While the UCC does not reference opening accounts explicitly, it extensively discusses authorization of signatures.

As discussed, the UCC preempts common law claims when the UCC has a "comprehensive remedy for the parties to a transaction[.]" *Dean*, 434 S.W.3d at 506 (internal quotation marks and citation omitted). The UCC "should also be understood to intend the displacement of the common law whenever both the code and the common law would provide a means of recovery for the same loss." *Id.* (quoting *Clancy Sys. Int'l, Inc. v. Salazar*, 177 P.3d 1235, 1237 (Colo. 2008)).

Here, the UCC provides direct guidance on authorization of signatures or lack thereof. KRS 355.1-201(2)(ao) defines an "unauthorized signature" as "a signature made without actual, implied, or apparent authority" and "includes a forgery[.]" *See Dean*, 434 S.W.3d at 498. Our Supreme Court has explained that

> [i]f a person acting, or purporting to act, as a representative signs an instrument by signing either the name of the represented person or the name of the signer, the represented person is bound by the signature to the same extent the represented person would be bound if the signature were on a simple contract.

*Id.* (quoting KRS 355.3-402).

Cubby Angel argues *Dean* is distinguishable because there, the account was set up by the owner of the law firm and here, Johnson alone set up the account. However, there is no dispute that Dr. Knuckles gave Johnson the authority to act as her representative by signing a power of attorney, not once, but twice. As the Court held in *Dean*, "[t]he simple fact is that Dean (as owner of the firm) was in the best position to stop or alleviate any loss." *Id.* at 510. Similarly, Dr. Knuckles was in the best position to alleviate her losses. We do not find *Dean* distinguishable.

As discussed, our precedent strongly encourages reliance on the UCC "whenever possible" – *Id.* at 506 (citation omitted) – and instructs this Court to "be hesitant to recognize common-law or non-U.C.C. claims . . . in the mistaken belief that [we] are dealing with one of the rare transactions not covered by the UCC."

*Id.* (internal quotation marks and citation omitted).  Under such guidance, we find

that the UCC preempts claims regarding authorization to open an account, like that

found here.

        **B.**       **Statutory Conversion Claim**

        Alternative to its common law claim for conversion, Cubby Angel

argues Citizens Bank committed statutory conversion under KRS 355.3-420

because Citizens Bank paid Johnson on numerous instruments payable to Cubby

Angel.  As discussed, KRS 355.3-420(1) details the cause of action for conversion

of an instrument:

> (1) The law applicable to conversion of personal property applies to instruments.  An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a *bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.*  An action for conversion of an instrument may not be brought by:
>
> > (a) The issuer or acceptor of the instrument; or
>
> > (b) A payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

(Emphasis added.)

        Cubby Angel claims Johnson was not entitled to enforce the

instruments; therefore, Citizens Bank improperly made payments under the statute.

However, Citizens Bank contends that Johnson had the requisite authority to

enforce the instruments.[8]  As such, our first question is whether there is a genuine issue of material fact regarding whether Dr. Knuckles granted Johnson the power to transact on behalf of Cubby Angel.

Again, there is no dispute that Dr. Knuckles executed the powers of attorney granting Johnson the power to "[e]stablish, modify, operate and terminate bank account[s] for and on behalf of Cubby Angel[,]" to execute any documents necessary to do so, and specifically authorizing "[a]ny party dealing with my attorney-in-fact hereunder [Johnson] [to] rely absolutely on the authority granted herein[.]"  Indeed, Cubby Angel's complaint expressly stated that Dr. Knuckles, on her own volition, signed the powers of attorney explicitly giving Johnson the power to receive, deposit, and withdraw funds from any financial institution on behalf of Cubby Angel.

Cubby Angel argues only that Dr. Knuckles failed to "thoroughly review" the documents and did not have an attorney review them prior to signing.[9]

_____

[8] Alternatively, Citizens Bank argues Cubby Angel would have been barred under KRS 355.3-420(1)(b) if Johnson did not have the requisite authority because that would have meant Cubby Angel did not "receive delivery of the instrument . . . through delivery to an agent[,]" citing *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 56 Cal. Rptr. 2d 756, 764 (Cal. App. 1996).  However, because we find there was no genuine issue of material fact regarding Johnson's authority, we need not address this argument.

[9] The circuit court and parties also discussed the validity of the notarization of the powers of attorney under KRS 61.060 and *Boden*; however, "[p]ursuant to [KRS] 61.060, a notary's acknowledgment that appears valid on its face may only be attacked by:  (1) a direct action against the notary, (2) an allegation of fraud by the party benefitted, or (3) a mistake by the notary."  *In re Pelfrey*, 419 B.R. 10, 17 (B.A.P. 6th Cir. 2009) (citing *In re St. Clair*, 380 B.R. 478, 484 (B.A.P. 6th Cir. 2008)).  As the notarization was valid on its face and there is no action

However, that does not render the documents unenforceable.  *See Morgan v. Mengel Co.*, 242 S.W. 860, 862 (Ky. 1922) (citation omitted) ("It is well settled that a person who signs an instrument without reading it, when he has the opportunity to read it and can read, cannot avoid the effect of his signature merely because he was not informed of its contents.").  Dr. Knuckles admits that she knowingly signed the documents, which gave Johnson the power to conduct business on behalf of Cubby Angel.

Because Cubby Angel could not undermine Dr. Knuckles's admitted signatures, it instead tried to argue that Citizens Bank should have questioned her blatant grant of authority.  Cubby Angel argues that it "was totally unaware of the account's existence . . . [and] never signed any customer agreement with [Citizens Bank,]" which it believes Citizens Bank should have required.  However, our Supreme Court has found that such assertions are not enough to show liability on the part of the bank.  The fact "[t]hat a principal did not approve an individual transaction (that is, a single instance of a signature) does not change the fact that an agent can have apparent authority to make the signature and thus engage in the transaction, at least when viewed from the perspective of the bank." *Dean*, 434 S.W.3d at 500.

_____

for fraud or mistake, any issue regarding the notary is relevant only to the direct action against the notary.

-17-

Moreover, simply raising alleged issues of fact is not enough to withstand summary judgment. As our Supreme Court explained,

> While reasonableness, like all factual questions, is ordinarily determined by the finder of fact, merely raising the question is not by itself sufficient to present it to the fact finder. The reasonableness of an act or omission is required to go to the jury only where there is a "factual dispute regarding the reasonable[ness]." But if "reasonable minds cannot differ," then the matter need not be submitted to a jury.

*Id.* at 503 (internal citations omitted).

Here, reasonable minds cannot differ. The parties agree that Dr. Knuckles signed the powers of attorney that explicitly gave Johnson the power to conduct business on behalf of Cubby Angel. As such, there exists no issue of fact[10] regarding whether Johnson was entitled to enforce the instruments under KRS 355.3-420(1). For the foregoing reasons, the circuit court properly granted summary judgment on the claims against Citizens Bank.

## IV. CONCLUSION

The UCC preempts Cubby Angel's common law claims, and Cubby Angel's statutory conversion claim is not sufficient as a matter of law. We AFFIRM the Johnson Circuit Court order.

---

[10] Additionally, Cubby Angel alleged numerous "issues of fact" that it stated, if proven true during discovery or trial, would entitle it to relief against Citizens Bank. However, because the UCC preempts the common law claims and the statutory claim is not sufficient as a matter of law, there is no set of facts which could entitle Cubby Angel to relief against Citizens Bank.

ALL CONCUR.


BRIEFS FOR APPELLANT:

David T. Royse
Lexington, Kentucky

Laurel K. Swilley
Myrtle Beach, South Carolina

BRIEF FOR APPELLEE:

John T. McGarvey
M. Thurman Senn
Louisville, Kentucky

Darrin W. Banks
Paintsville, Kentucky